649 S.E.2d 57

**Dan F. WILLIAMSON and Dan F. Williamson and Company, Appellants,**

v.

**Alfred C. MIDDLETON, Respondent.**

**No. 4243.**

Court of Appeals of South Carolina.

Heard Nov. 8, 2006.

Decided May 7, 2007.

Rehearing Denied Aug. 24, 2007.

420

Desa A. Ballard, of W. Columbia, for Appellants.

James C. Parham, Patricia S. Revenhorst, and Wallace K. Lightsey, for Respondents.

HEARN, C.J.

Dan F. Williamson and Dan F. Williamson and Company (collectively, "Williamson") appeal from the trial judge's award of attorneys' fees to Alfred C. Middleton. Williamson argues that Middleton is not entitled to attorneys' fees, or in the alternative, that the criteria for awarding attorneys' fees were not met in this case. We affirm.[1]

## FACTS

Prior to this litigation, Middleton worked for a number of years as a commissioned salesman for Williamson. When Middleton quit working for Williamson, he was due a commission for having sold pallets to one of Williamson's customers. Middleton and Williamson disagreed as to the amount of commission due to Middleton, and Williamson never paid Middleton any commission, even though it eventually admitted owing him $906.62.

Middleton left his employment with Williamson to work for Peninsula Plastics, Inc., one of Williamson's pallet suppliers. While at his new job, Middleton continued to seek the commission Williamson owed him to no avail, and in the spring of 2001, he hired Mr. James C. Parham, a partner with the Wyche Burgess law firm. Middleton and Parham were personal friends who had met years before when Middleton owned a sporting goods store that Parham frequently visited.

On behalf of Middleton, Parham wrote to Williamson inquiring about the commission due. When he received no response, Parham spoke with Williamson's attorney, Bill Jordan, informing him that a complaint had already been drafted and

---

1. In a split decision, a three-judge panel from this court reversed the award. *See Williamson v. Middleton,* Op. No. 4135 (S.C. Ct.App. filed July 10, 2006) (Shearouse Adv. Sh. No. 27 at 47). We granted *en banc* review, which has again resulted in a divided court. Five panel members vote to affirm the award, and four panel members vote to reverse it. This division results in an affirmance of the trial judge's award of attorneys' fees. *See* S.C.Code Ann. § 14–8–90 (Supp.2006) (requiring a concurrence of six of the judges when *reversing* the judgment below).

that Middleton was ready to sue to recover the unpaid commission. Jordan requested that Middleton refrain from acting on the drafted complaint until Jordan could speak with his client. Parham agreed, and two days later, Jordan filed a complaint on behalf of Williamson against Middleton, alleging causes of action for fraud, constructive fraud, breach of fiduciary duty, and violation of the South Carolina Unfair Trade Practices Act. Middleton filed an answer, denying the allegations and counterclaiming for commissions owed and sanctions under the South Carolina Frivolous Proceedings Act. Middleton also requested attorneys' fees. Upon the initiation of litigation, Patricia Ravenhorst, an associate with the Wyche Burgess firm, assisted Parham in representing Middleton.

While preparing for trial, Middleton had an extraordinarily difficult time collecting responses to its requests for discovery. In Middleton's first set of interrogatories for Williamson, Middleton asked that Williamson "state with particularity the facts alleged by [Williamson] to form the basis of the first, second, third, fourth, fifth, and sixth causes of action." Williamson provided no alleged facts and instead responded with a mere promise to "supplement[ ] after further discovery and investigation." A verbatim response was provided to Middleton's request for a statement of all damages sustained by Williamson. After receiving these unhelpful responses, Middleton's attorneys initiated several phone conversations and wrote a number of letters imploring Williamson to respond to their requests.

While Middleton waited for discovery responses during the ensuing months, Williamson filed a motion in October of 2001 seeking to amend its pleadings to add Peninsula Plastics and Middleton's supervisor at Peninsula Plastics as defendants and to add three more causes of action. When the hearing on Williamson's motion was just days away, it finally supplemented its responses to Middleton's discovery requests. On November 17, 2001, Judge Henry Floyd denied Williamson's motion to amend, finding it was not well founded, was not required by justice, and would be prejudicial to Middleton. Less than one month later, Williamson filed a separate lawsuit against Middleton; this suit also named Peninsula Plastics and Middleton's supervisor as parties and included the very causes of action Williamson attempted to append to the initial com-

plaint against Middleton. Only after Middleton moved to dismiss this new lawsuit and sought attorneys' fees did Williamson voluntarily dismiss this second complaint.

In addition to Williamson's race to the courthouse to be the first to file, its uncooperativeness when responding to discovery, and its attempt to circumvent Judge Floyd's order, Williamson also cancelled depositions and mediation several times. In at least one instance, the cancellation was communicated so late that Middleton and both of his attorneys were already at the mediator's office when Williamson's attorney called to cancel. Approximately one month prior to trial, Williamson's attorney moved to be relieved as counsel, and Williamson hired its current counsel.

Of Williamson's claims against Middleton, only its cause of action for breach of fiduciary duty went to the jury. The jury returned a verdict in favor of Middleton on that cause of action, and it also found in favor of Middleton on his counterclaim for unpaid commissions, awarding him $906.62 in actual damages.

The trial judge, Judge Pyle, found Middleton was entitled to attorneys' fees, but he asked the parties to attempt to determine the amount of attorneys' fees amongst themselves. In the event the parties could not agree to an amount, Judge Pyle explained he would set the amount for them. The parties could not come to a consensus on the amount of attorneys' fees, and Middleton petitioned the court for assistance. A hearing was held before Judge Miller, who awarded Middleton $35,000 in attorneys' fees. On appeal, our court reversed this award of attorneys' fees, finding Judge Pyle retained exclusive jurisdiction over the matter. We therefore reversed Judge Miller's award and remanded the issue of attorneys' fees for Judge Pyle's consideration. *See Williamson v. Middleton,* 2005–UP–011 (S.C. Ct.App. filed January 11, 2005).

At the hearing before Judge Pyle, Williamson argued Middleton was not entitled to attorneys' fees because he was not the prevailing party; the bill Middleton's counsel presented documenting over $100,000 worth of work listed hours spent on claims other than the unpaid commissions claim for which attorneys' fees are allowed; and the amount of fees Middleton's counsel requested, $35,000, far exceeded the $906.62

verdict. Williamson also argued Middleton did not actually incur any fees because when Parham was deposed, he admitted there was no written fee agreement between him and Middleton.

Judge Pyle found Middleton was entitled to attorneys' fees because he prevailed in his action against Williamson for unpaid commissions pursuant to section 39–65–20 of the South Carolina Code. Judge Pyle found that in light of "the detailed time statements, the affidavits of Middleton's counsel, and a review of the supporting memorandum and notebook of exhibits presented by Middleton's counsel, ·... the time and labor were reasonable, not duplicative and were required of Middleton's counsel in asserting his claim and overcoming the obstructions presented by [Williamson]." Judge Pyle also pointed out that although the detailed statements submitted by Middleton's counsel showed $106,992 in attorneys' fees, Middleton requested only a fraction of that amount. With regard to contingency of compensation, Judge Pyle acknowledged that Middleton and his attorney had not entered into a formal, written fee agreement, but they relied instead "on their longstanding personal relationship and mutual agreement to determine an appropriate fee for services at the conclusion of this matter." Judge Pyle found such an agreement did not preclude attorneys' fees. Finally, the judge noted that the fees were reasonable despite a verdict of only $906.62 because Williamson forced Middleton to file his counterclaim even though Williamson admitted he owed this amount at trial. Judge Pyle explained:

> Failure to award Middleton reasonable attorneys' fees and costs incurred in this matter would encourage employers to discourage and obstruct legitimate claims by employees.... Employers, such as [Williamson], with significant financial resources should not be permitted to systematically obstruct an employee's efforts to recover unpaid commissions or other wages however small the sum might be. Such a result would be especially egregious in the present case considering the fact that [Williamson] admit[s] owing Middleton these unpaid commissions before and during the course of this extended litigation, but consistently refused to pay him anything.

Accordingly, Judge Pyle awarded Middleton $35,000 in attorneys' fees. Williamson filed a Rule 59(e), SCRCP, motion, which was denied. This appeal followed.

## STANDARD OF REVIEW

The parties disagree as to the standard of review. During oral argument, Williamson urged us to apply either an equitable standard of review pursuant to *Hanahan v. Simpson*, 326 S.C. 140, 485 S.E.2d 903 (1997), or an abuse of discretion standard of review pursuant to *Russell v. Wachovia*, 370 S.C. 5, 633 S.E.2d 722 (2006).[2] In either event, Williamson argued we should not review the trial judge's decision under an "any evidence" standard. Middleton agrees that an abuse of discretion standard should be applied, but that under such standard, an appellate court will affirm the trial judge so long as there is any competent evidence supporting the judge's decision.

We find the law well settled that the review of attorney's fees awarded pursuant to statute is governed by an abuse of discretion standard. *See, e.g., Blumberg v. Nealco*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) (finding that a trial judge's decision to award attorney's fees will not be reversed on appeal absent an abuse of discretion); *Heath v. County of Aiken*, 302 S.C. 178, 182, 394 S.E.2d 709, 711 (1990) (holding that when attorney's fees are awarded pursuant to section 15–77–300 of the South Carolina Code, the appellate

---

2. The *Hanahan* case to which Williamson cites sets forth an equitable standard of review when attorney's fees are awarded as a sanction for filing a frivolous proceeding. Under the Frivolous Proceedings Act, a judge, sitting without a jury, determines whether the party against whom attorney's fees are sought initiated litigation in bad faith or with no reasonable cause. This is an equitable determination, and therefore, an equitable standard of review is used when considering the trial judge's award of fees. *See Brown v. State Farm Mutual Ins. Co.*, 275 S.C. 276, 269 S.E.2d 769 (1980). Unlike a fee awarded as a sanction under the Frivolous Proceedings Act, the attorney's fee awarded to Middleton was based on the jury's award of commissions pursuant to section 39–65–20 of the South Carolina Code (Supp.2006). A party who violates section 39–65–20 is liable for "attorney's fees actually and reasonably incurred by the sales representative in the action...." S.C.Code Ann. § 39–65–30 (Supp.2006). Thus, the award of attorney's fees was based upon the jury's finding for Middleton and was not an equitable determination by the trial judge.

court reviews the award under an abuse of discretion standard); *Video Gaming Consultants, Inc. v. S.C. Dep't of Revenue,* 358 S.C. 647, 649–52, 595 S.E.2d 890, 891 (Ct.App.2004) ("On appeal, the trial court's decision regarding attorney's fees under S.C.Code Ann. § 15–77–300 (Supp.2003) will not be disturbed absent an abuse of discretion."). The law is equally clear that an appellate court will not reverse an award unless it is based on an error of law or is without *any evidentiary support. See Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) ("An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support."); *Baron Data Sys. v. Loter,* 297 S.C. 382, 384, 377 S.E.2d 296, 296 (1989) ("Where an attorney's services and their value are determined by the trier of fact, an appeal will not prevail if the findings of fact are supported by any competent evidence."); *Fontaine v. Peitz,* 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987) ("An abuse of discretion occurs when the judge's ruling is based upon an error of law or when based upon factual conclusion, is without evidentiary support."). Accordingly, we will affirm the trial judge's award of $35,000 in attorneys' fees if any competent evidence exists to support the award.

## LAW/ANALYSIS

■ Williamson first argues Middleton is not entitled to attorneys' fees because he does not meet the requirements of section 39–65–30 of the South Carolina Code. Specifically, Williamson points out that this statute only applies to sales representatives who seek to recover commissions on "wholesale" sales, and the sale Middleton seeks commissions from was made to the ultimate consumer. We find this issue is not preserved for our review.

Initially, we note that Williamson's arguments to Judge Pyle on this issue are not reflected in the record on appeal. Williamson did not advance this argument at the hearing before Judge Pyle, and although Williamson's counsel refers to a memorandum she filed in opposition to Middleton's request for attorneys' fees, that memorandum was not included in the record on appeal. *See Taylor v. Taylor,* 294 S.C. 296, 299, 363 S.E.2d 909, 911 (Ct.App.1987) ("The burden is on the appellant to furnish a sufficient record on appeal from which

this court can make an intelligent review."). We acknowledge, however, that Judge Pyle addressed the argument in his order awarding attorneys' fees, suggesting the argument was set forth in Williamson's memorandum. In the order, Judge Pyle found Williamson's argument that Middleton was not entitled to attorneys' fees and costs pursuant to section 39–65–30 came too late because during trial, Williamson never objected to the jury instructions referencing section 39–65–30, nor did Williamson challenge Judge Pyle's initial ruling that Middleton was entitled to attorneys' fees. Williamson did not seek a reconsideration of these findings by Judge Pyle in its Rule 59(e) motion.

In its brief to our court, Williamson argues that "[e]ven though the jury returned a verdict ... that awarded Middleton $906.62 for unpaid commissions, this recovery was sought on alternate grounds, both pursuant to § 39–65–30 and § 41–10–10." In so arguing, Williamson implies the jury's award was based on a statute other than section 39–65–30. Williamson further contends that its argument on this issue is timely because "the request for attorney fees is predicated on entirely different factors than was the request for commissions." From the record before us, there is no indication this specific argument was ever made to the trial judge, either prior to the order awarding attorneys' fees or in Williamson's motion for reconsideration. Thus, the issue is not preserved for review. See Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."); State v. Nelson, 331 S.C. 1, 5 n. 6, 501 S.E.2d 716, 718 n. 6 (1998) ("[T]he ultimate goal behind preservation of error rules is to insure (sic) that an issue raised on appeal has first been addressed to and ruled on by the trial court.").

■ Next, Williamson argues Middleton did not actually incur any attorneys' fees. We disagree.

The jury awarded Middleton unpaid commission pursuant to section 39–65–20 of the South Carolina Code. When an employer violates that code section, the employer is liable for "attorney's fees actually and reasonably incurred by the sales

representative in the action and court costs." Williamson argues Middleton never incurred attorneys' fees because he had no obligation to pay Parham. In support of its argument, Williamson focuses on Parham's deposition testimony in which he stated:

[W]e don't have a fee agreement with Mr. Middleton. We talked about this with Mr. Middleton to begin with and we decided that we would try to help him collect the monies due him and at the end of the case, we would talk about a fee. So we don't have a fee agreement with him. But some day, he might pay us a fee. Right now, he has no obligation at this point if there is no agreement. He might feel a moral obligation. And when we talk at the end of the case, he will have the final say.

Williamson argues this statement indicates Middleton had neither a fee agreement with nor an obligation to his attorneys, and accordingly, the holding of *Hopkins v. Hopkins,* 343 S.C. 301, 540 S.E.2d 454 (2000), precludes attorneys' fees from being awarded.

In *Hopkins,* the supreme court upheld the family court's determination that Husband was not entitled to attorney's fees when he was represented at trial by his new wife, an attorney. In so holding, the supreme court not only pointed out there was no fee agreement between Husband and his wife/attorney, but the *Hopkins* court also stressed there was no "indication or testimony that [Husband's] wife/attorney intends to collect the fees from [Husband]." *Id.* at 307, 540 S.E.2d at 457.

Unlike *Hopkins,* there is evidence in this record to indicate Middleton's attorneys intended to collect their fee from Middleton. While Parham's testimony, excerpted above, could be interpreted to mean Middleton would never be required to pay a fee, it also indicates that "at the end of the case, [Middleton and his attorneys] would talk about a fee." Judge Pyle adopted this latter interpretation, finding that although there was no "formal, written fee agreement in this matter," Middleton and his counsel "have relied on their long-standing personal relationship and mutual agreement to determine an appropriate fee for services at the conclusion of this matter." Additionally, Parham testified he was *hired* by Middleton in the Spring of 2001, and since that time, diligent records were

kept detailing the amount of time spent on the case. Furthermore, while Parham described Middleton as his "good friend," such a relationship is not akin to the matrimonial bond found in Hopkins from which gratuitous representation would be expected. It would be even less reasonable to believe Ravenhorst, Middleton's second-chair attorney who had no prior relationship with Middleton, would have volunteered her time without an expectation of being paid.

▮ Although we recognize there was no formal fee agreement between Middleton and his attorneys, the lack of such an agreement does not preclude an attorney from collecting fees. *See Singleton v. Collins*, 251 S.C. 208, 210–11, 161 S.E.2d 246, 247 (1968) ("An attorney has a right to be paid for professional services rendered, and where there is no express contract, the law will imply one."). Although the *Singleton* case is procedurally different from the case at hand, its determination regarding attorney's fees is instructive. In *Singleton*, an attorney filed an action to collect fees after rendering services to a client in a domestic relations action. Despite the lack of a formal contract, the trial court implied a contract and determined the amount of attorney's fees owed. Our supreme court upheld the trial court's decision, noting: "Whether the services were rendered, and their value, are matters of fact to be decided ... by the court below, and no appeal lies therefrom if the findings of fact are supported by any competent evidence." *Id.* at 211, 161 S.E.2d at 247.

Although *Singleton* involves the collection of attorney's fees from a client rather than an opposing party, it illustrates that the lack of a formal agreement is not fatal to an attorney's claim for fees. Here, the trial judge was not precluded from awarding attorneys' fees simply because Middleton and his attorneys lacked a written agreement. Rather, so long as there was evidence Middleton's attorneys intended to collect a fee, the trial judge had discretion to award the fee. Not only did Judge Pyle find there was such evidence, but Judge Miller, whose ruling was reversed for lack of subject matter jurisdiction, found an informal agreement existed as well. Because there is competent evidence in the record to support the findings of these two outstanding trial judges, we find no abuse in discretion.

In addition to its argument that Middleton did not incur attorneys' fees, Williamson also argues Middleton failed to prove the other elements necessary to recover fees. We disagree.

When awarding attorney's fees, the trial court must consider the following six factors: (1) the nature, extent, and difficulty of the legal services rendered; (2) the time and labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar legal services; and (6) the beneficial results obtained. *Baron Data Sys., Inc., v. Loter,* 297 S.C. at 384–85, 377 S.E.2d at 297. "Where an attorney's services and their value are determined by the trier of fact, an appeal will not prevail if the findings of fact are supported by *any* competent evidence." *Id.* at 384, 377 S.E.2d at 296 (emphasis added). Here, Judge Pyle made specific findings on each of the six elements, and there is evidence in the record supporting those findings.

Finally, Williamson argues that even if Middleton was entitled to attorneys' fees, the amount of attorneys' fees awarded was unreasonable in light of the meager verdict Middleton received. However, "there is no requirement that attorney's fees be less than or comparable to a party's monetary judgment." *Taylor v. Medenica,* 331 S.C. 575, 580, 503 S.E.2d 458, 461 (1998). Furthermore, although a $35,000 attorneys' fee may initially seem high for a cause of action for unpaid commissions, especially when the action resulted in a $906.62 verdict, under the peculiar circumstances of this case, there was evidence in the record supporting the trial judge's finding that $35,000 was a reasonable amount to award.

First and foremost, it is important to note that Middleton's attorney did not institute this lawsuit. Rather, in the best tradition of the profession, he attempted to settle this matter with Williamson, and at the specific request of opposing counsel, Middleton delayed bringing suit. However, within a matter of days, Williamson filed suit against Middleton, asserting four causes of action which were ultimately determined to be meritless. In order to litigate his cause of action for unpaid commissions, Middleton had to defend himself against Williamson's claim against him for breach of fiduciary duty,

which is an affirmative defense for unpaid commissions. Additionally, Middleton submitted affidavits demonstrating how Williamson employed dilatory tactics prior to the trial of this case, such as persuading Middleton to forebear from filing its complaint so that it could be the first to file, cancelling depositions on the afternoon before or the morning of their scheduled time, and submitting incomplete responses to Middleton's requests for discovery. Moreover, Judge Pyle, who awarded $35,000 in attorneys' fees, had been the trial judge in this matter, and he was acutely aware of the challenges faced by Middleton's attorneys. Considering the detailed bills submitted by Middleton's attorneys and the difficulties they faced in trying their case, we find competent evidence supports the trial judge's award of $35,000 in attorneys' fees.

## CONCLUSION

Based on our limited standard of review and the unusual circumstances of this case, we find no error in the trial judge's award of $35,000 in attorneys' fees to Middleton. Accordingly, the order of the trial judge is

**AFFIRMED.**

HUFF, STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.

ANDERSON, BEATTY, SHORT, JJ., and CURETON, A.J., each dissent in separate opinions.

ANDERSON, J., dissenting in a separate opinion:

I disagree with the majority's reasoning and analysis and **VOTE** to **REVERSE** the award of fees.

### *FACTUAL/PROCEDURAL BACKGROUND*

For several years, Middleton worked for Williamson as a commissioned salesman. When Middleton quit working for Williamson, he was due a commission for having sold yarn pallets to one of Williamson's customers. Middleton and Williamson disagreed as to the amount of commission due, and Williamson never paid Middleton any commission, even though it acknowledged owing him $906.62.

After leaving his employment with Williamson, Middleton began working for Peninsula Plastics, Inc., one of Williamson's pallet suppliers. Middleton continued to seek the commission Williamson owed him, and sought assistance from his present attorney. Middleton and his counsel are personal friends, and counsel previously had represented Middleton in less-complicated matters without charge. Middleton's attorney agreed to help with the claim for commission, and the two were to discuss a fee at the end of the case.

Williamson initially was represented by Jordan & Clardy, LLC. Middleton's attorneys informed Williamson that they had a complaint drafted and were ready to sue in order to recover the unpaid commission. Williamson's attorney requested that Middleton refrain from acting on the drafted complaint until he could speak with his client. Middleton agreed, and two days later, Williamson filed a complaint against Middleton, alleging causes of action for fraud, constructive fraud, breach of fiduciary duty, and violation of the South Carolina Unfair Trade Practices Act. Middleton filed an answer, denying the allegations and counterclaiming for commissions owed and sanctions under the South Carolina Frivolous Proceedings Act. Approximately one month prior to trial, Williamson hired its current counsel.

Of Williamson's claims against Middleton, only the cause of action for breach of fiduciary duty went to the jury. The jury returned a verdict in favor of Middleton on that cause of action and found in favor of Middleton on his counterclaim for unpaid commission, awarding him $906.62 in actual damages.

The trial judge, Judge Pyle, ruled Middleton was entitled to attorney's fees, but asked the parties to attempt to determine the amount of attorney's fees themselves. In the event they could not agree to an amount, Judge Pyle explained he would set the amount for them. The parties could not come to a consensus on the amount of attorney's fees, and Middleton petitioned the court for assistance. Judge Miller awarded Middleton $35,000 in attorney's fees. In an unpublished opinion, *Williamson v. Middleton,* 2005–UP–011 (S.C. Ct.App. filed January 11, 2005), this Court found that Judge Pyle had retained exclusive jurisdiction over the matter. We therefore

reversed Judge Miller's award and remanded the issue of attorney's fees for Judge Pyle's consideration.

At the hearing before Judge Pyle, Williamson argued Middleton was not entitled to attorney's fees because (1) he was not the prevailing party; (2) the bill Middleton's counsel presented documenting over $100,000 worth of work listed hours spent on claims other than the unpaid commission claim for which attorney's fees are allowed; and (3) the amount of fees Middleton's counsel requested, $35,000, far exceeded the $906.62 verdict. Williamson further maintained Middleton did not incur any fees because when Middleton's counsel was deposed, he admitted there was no fee agreement between him and Middleton.

Judge Pyle acknowledged that Middleton and his attorney had not entered into a formal, written fee agreement, but relied instead "on their long-standing personal relationship and mutual agreement to determine an appropriate fee for services at the conclusion of this matter." The judge found such an agreement did not preclude attorney's fees. Accordingly, Judge Pyle awarded Middleton $35,000 in attorney's fees. Williamson filed a Rule 59(e), SCRCP, motion, which was denied.

## STANDARD OF REVIEW

There must be sufficient evidence in the record to support each of the six factors analyzed for an award of attorney's fees. *See Taylor v. Medenica,* 331 S.C. 575, 580, 503 S.E.2d 458, 461 (1998). "On appeal, absent sufficient evidentiary support on the record for each factor, the award should be reversed and the issue remanded for the trial court to make specific findings of fact." *Blumberg v. Nealco,* 310 S.C. 492, 494, 427 S.E.2d 659, 661 (1993).

The interpretation of a statute is not a finding of fact. *Thompson v. Ford Motor Co.,* 200 S.C. 393, 21 S.E.2d 34 (1942). "The issue of interpretation of a statute is a question of law for the court." *Jeter v. S.C. Dep't of Transp.,* 369 S.C. 433, 633 S.E.2d 143 (2006) (Shearouse Adv. Sh. No. 23 at 43) citing *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 459 S.E.2d 841 (1995); *see also Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 621,

611 S.E.2d 297, 301 (Ct.App.2005) ("The determination of legislative intent is a matter of law.") (citations omitted); *Eldridge v. City of Greenwood*, 331 S.C. 398, 417, 503 S.E.2d 191, 200 (Ct.App.1998) ("[T]he interpretation of a statute is a matter of law."). *See, e.g., Carolina Power & Light Co. v. Town of Pageland*, 321 S.C. 538, 471 S.E.2d 137 (1996); *Byrd v. Irmo High School*, 321 S.C. 426, 468 S.E.2d 861 (1996); *Rowe v. Hyatt*, 321 S.C. 366, 468 S.E.2d 649 (1996).

## *LAW/ANALYSIS*

### I. SECTION 39–65–30 OF THE SOUTH CAROLINA CODE

Williamson first argues Middleton is not entitled to attorney's fees because he does not meet the requirements of section 39–65–30 of the South Carolina Code (Supp.2005). Specifically, Williamson points out that this statute only applies to sales representatives who seek to recover commissions on "wholesale" sales, and the commission awarded to Middleton was from a sale made to the ultimate consumer. I find this issue is not preserved for our review.

Initially, I note that the arguments Williamson made to Judge Pyle on this issue are not reflected in the record on appeal. Williamson did not advance this argument at the hearing before Judge Pyle, and although Williamson's counsel refers to a memorandum she filed in opposition to Middleton's request for attorney's fees, that memorandum was not included in the record on appeal. *See Taylor v. Taylor*, 294 S.C. 296, 299, 363 S.E.2d 909, 911 (Ct.App.1987) ("The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review."). I acknowledge, however, that Judge Pyle addressed the argument in his order awarding attorney's fees, suggesting the argument was set forth in Williamson's memorandum. In the order, Judge Pyle found Williamson's argument that Middleton was not entitled to attorney's fees and costs pursuant to section 39–65–30 came too late because during trial, Williamson never objected to the jury instructions referencing section 39–65–30, nor did Williamson challenge Judge Pyle's initial ruling that Middleton was entitled to attorney's fees.

In its brief to our court, Williamson argues that "[e]ven though the jury returned a verdict ... that awarded Middleton $906.62 for unpaid commissions, this recovery was sought on alternate grounds, both pursuant to § 39–65–30 and § 41–10–10." In so arguing, Williamson implies the jury's award was based on a statute other than section 39–65–30. Williamson further contends that its argument on this issue is timely because "the request for attorney fees is predicated on entirely different factors than was the request for commissions." From the record before this court, there is no indication this specific argument was ever made to the trial court, either prior to the order awarding attorney's fees or in Williamson's motion for reconsideration. Thus, the issue is not preserved for review. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."); *see also Floyd v. Floyd*, 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App.2005) (" 'Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments.' ") (quoting *I'On, L.L.C v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000)); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App.2004) ("Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.").

Next, Williamson argues Middleton failed to prove the elements necessary to recover fees. I agree.

The general rule is that attorney's fees are not recoverable unless authorized by contract or statute. *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) (citing *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 383 377 S.E.2d 296, 297 (1989); *Hegler v. Gulf Ins. Co.*, 270 S.C. 548, 548, 243 S.E.2d 443, 444 (1978)); *accord Seabrook Island Property Owners' Ass'n v. Berger*, 365 S.C. 234, 238, 616 S.E.2d 431, 434 (Ct.App.2005). "In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees." *Harris–Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 176, 557 S.E.2d 708, 710 (Ct.App.

2001) (citing *Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997); *American Fed. Bank, FSB v. Number One Main Joint Venture,* 321 S.C. 169, 175, 467 S.E.2d 439, 442 (1996); *Blumberg,* 310 S.C. at 493, 427 S.E.2d at 660; *Baron Data,* 297 S.C. at 383, 377 S.E.2d at 297; *Dowaliby v. Chambless,* 344 S.C. 558, 560, 544 S.E.2d 646, 647 (Ct.App.2001); *Harvey v. South Carolina Dep't of Corrections,* 338 S.C. 500, 510, 527 S.E.2d 765, 770 (Ct.App.2000); *Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 160, 503 S.E.2d 483, 489 (Ct.App. 1998); *Prevatte v. Asbury Arms,* 302 S.C. 413, 415, 396 S.E.2d 642, 643 (Ct.App.1990)).

Section 39–65–30 provides:

A principal who fails to comply with the provisions of Section 39–65–20 is liable to the sales representative in a civil action for:

(1) all amounts due the sales representative plus punitive damages in an amount not to exceed three times the amount of commissions due the sales representative; and

(2) attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.

S.C.Code Ann. § 39–65–30 (Supp.2005). The jury awarded Middleton the unpaid commission pursuant to section 39–65–20.

When awarding attorney's fees, the trial court must consider the following six factors: (1) the nature, extent, and difficulty of the legal services rendered; (2) the time and labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar legal services; and (6) the beneficial results obtained. *Baron Data,* 297 S.C. at 384–85, 377 S.E.2d at 297. When awarding attorney's fees, "there is no requirement that [the fees] be less than or comparable to a party's monetary judgment." *Taylor v. Medenica,* 331 S.C. 575, 580, 503 S.E.2d 458, 461 (1998).

Here, Middleton incurred no attorney's fees because no fee agreement existed between Middleton and his attorney. In his deposition, Middleton's lead counsel stated:

**[W]e don't have a fee agreement with Mr. Middleton.** We talked about this with Mr. Middleton to begin with and we decided that we would try to help him collect the monies

due him and at the end of the case, we would talk about a fee. **So we don't have a fee agreement with him.** But some day, he might pay us a fee. **Right now, he has no obligation at this point if there is no agreement.** He might feel a moral obligation. And when we talk at the end of the case, he will have the final say.

(Emphasis added.)

Counsel's testimony admits there was no fee agreement with Middleton. Consequently, there is no obligation to pay, and no fees have been incurred.

*Hopkins v. Hopkins*, 343 S.C. 301, 540 S.E.2d 454 (2000), involved Father's action to recover overpayment of child support and attorney's fees. The court found Father was entitled to reimbursement of child support overpayments but held he could not recover attorney's fees because his current wife represented him and they did not have a fee agreement. The court began its analysis by noting that *Calhoun v. Calhoun*, 339 S.C. 96, 100, 529 S.E.2d 14, 17 (2000), held a *pro se* litigant could not recover attorney's fees because "a *pro se* litigant, whether an attorney or layperson, does not become 'liable for or subject to fees charged by an attorney.'" 343 S.C. at 306, 540 S.E.2d at 457. The Hopkins court declared:

> [H]ere, we find no evidence Father actually became "liable for or subject to" attorneys' fees for his attorney/wife's service. There is no contract or fee agreement in the record, nor is there any indication or testimony that Father's wife/attorney has attempted or intends to collect the fees from Father. Accordingly, Father did not prove that he became liable for the fees, such that the family court properly denied Father's request.

343 S.C. at 307, 540 S.E.2d at 457.

The rationale of Hopkins is equally applicable in the instant case. Both *Calhoun* and *Hopkins* focused on the litigants' lack of liability for attorney's fees. Here, Middleton's counsel admits Middleton "has no obligation at this point if there is no agreement." There is no agreement; therefore, Middleton owes no obligation to pay, and no fees were incurred. Under these facts the trial judge erred in awarding attorney's fees. I DO NOT HOLD OR RULE THAT A FORMAL FEE AGREEMENT *INTER SESE* CLIENT–ATTORNEY IS

NECESSARY AS A PREDICATE FOR AN AWARD OF ATTORNEY'S FEES IN SOUTH CAROLINA. I DO, HOWEVER, HOLD THAT THE SERVICES RENDERED BY THE ATTORNEY MUST HAVE BEEN RENDERED UNDER CIRCUMSTANCES WHEREBY THE PARTIES UNDERSTOOD THAT THE CLIENT WAS REQUIRED TO PAY THE ATTORNEY FOR THE SERVICES RENDERED, ALBEIT, THE AMOUNT WAS NOT AGREED UPON AND A REASONABLE FEE NECESSARILY MUST BE IMPLIED. THAT WAS NOT THE SITUATION IN THIS CASE. THE CONTROLLING STATUTE IN THIS CASE MANDATES THAT AN ATTORNEY FEE BE ACTUALLY INCURRED BEFORE THE COURT IS ENTITLED TO AWARD ATTORNEY'S FEES.

## II. REASONABLENESS OF ATTORNEY'S FEES

Assumptively concluding that an award for an attorney's fee in this case should be given, I address the reasonableness of the attorney's fee awarded.

### A. Initial Analysis by the Trial Court: Determining Whether Attorney's Fees Should Be Awarded

When presented with a request for attorney's fees, the trial court must first determine whether such an award is warranted. In making this determination, the following factors should be considered:

(1) each party's respective ability to pay his/her own attorney's fee;

(2) beneficial results obtained by the requesting party's attorney;

(3) the parties' respective financial conditions; and

(4) effect of the attorney's fee on each party's standard of living.

*Lanier v. Lanier*, 364 S.C. 211, 220, 612 S.E.2d 456, 461 (Ct.App.2005); *Lacke v. Lacke*, 362 S.C. 302, 317, 608 S.E.2d 147, 155 (Ct.App.2005); *Doe v. Doe*, 324 S.C. 492, 505, 478 S.E.2d 854, 861 (Ct.App.1996); *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992); *Glasscock v. Glasscock*, 304 S.C. 158, 160, 403 S.E.2d 313, 315 (1991).

### B. Where Statute or Contract Permits Award of "Reasonable" Attorney's Fees: Six Factors for Consideration by Trial Courts Regarding the Amount of Attorney's Fees Awarded

#### 1. What Constitutes a "Reasonable" Attorney's Fee: Six Factors

When determining what constitutes a "reasonable" attorney's fee, the trial court must consider the following six factors: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Seabrook Island Prop. Owners' Ass'n v. Berger,* 365 S.C. 234, 616 S.E.2d 431 (Ct.App.2005); *Lanier,* 364 S.C. at 220, 612 S.E.2d at 461; *Rowell v. Whisnant,* 360 S.C. 181, 185, 600 S.E.2d 96, 99 (Ct.App.2004); *Gordon v. Drews,* 358 S.C. 598, 613, 595 S.E.2d 864, 872 (Ct.App.2004); *Burton v. York County Sheriff's Dep't,* 358 S.C. 339, 358, 594 S.E.2d 888, 898 (Ct.App.2004); *Vick v. South Carolina Dep't of Transp.,* 347 S.C. 470, 484, 556 S.E.2d 693, 700 (Ct.App. 2001); *Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 503 S.E.2d 483 (Ct.App.1998); *Taylor v. Medenica,* 331 S.C. 575, 580, 503 S.E.2d 458, 461 (1998); *Jackson v. Speed,* 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997); *Prevatte v. Asbury Arms,* 302 S.C. 413, 416, 396 S.E.2d 642, 644 (Ct.App.1990); *Dedes v. Strickland,* 307 S.C. 155, 160, 414 S.E.2d 134, 137 (1992); *Baron Data Sys., Inc. v. Loter,* 297 S.C. 382, 384, 377 S.E.2d 296, 297 (1989).

#### 2. No One Factor is Controlling

Consideration should be given by the trial court to all six factors; none of the factors is controlling. *Taylor v. Medenica,* 331 S.C. at 580, 503 S.E.2d at 461; *Baron Data Sys.,* 297 S.C. at 384, 377 S.E.2d at 297.

#### 3. Explanation of Factors/Examples of Application of Facts to Six Factors

● *Baron Data Systems, Inc. v. Loter,* 297 S.C. 382, 384–85, 377 S.E.2d 296, 297–98 (1989):

In awarding reasonable attorney's fees, there are six factors to be considered. *See, e.g., Wood v. Wood,* 269 S.C.

600, 239 S.E.2d 315 (1977); *Bentrim v. Bentrim*, 282 S.C. 333, 318 S.E.2d 131 (Ct.App.1984). Consideration should be given to all six criteria in establishing reasonable attorney's fees; none of these six factors is controlling. *Darden v. Witham*, 263 S.C. 183, 209 S.E.2d 42 (1974).

In making its determination, the trial court articulated each of the six factors.

(1) The Nature, Extent and Difficulty of the Legal Services Rendered.

Upon its evaluation of the nature, extent and difficulty of the legal services, the trial court determined that Baron had to expend considerably more time and effort on the case because the defendants had transformed a simple collection action into complex litigation.

(2) The Time and Labor Necessarily Devoted to the Case.

The trial court concluded that "a review of the statements and affidavits of Baron's trial attorney indicate clearly that the time and labor spent were reasonable and not duplicative." The respondents did not dispute this conclusion.

(3) The Professional Standing of Counsel.

The circuit court's determination that Baron's trial attorney is an experienced, skilled attorney, of high professional standing in the community was based upon a careful review of the affidavits of Baron's expert and its trial attorney, which included the attorney's resume. Respondents did not contest the trial court's determination.

(4) The Contingency of Compensation.

Not applicable since this was not a contingency case.

(5) The Fee Customarily Charged in the Locality for Similar Legal Services.

Based upon a review of the attorney's resume, affidavits and its familiarity with attorney fees customarily charged in this legal community, the trial court found that the rate of $100 per hour was appropriate.

(6) The Beneficial Results Obtained.

The trial court decided that the total benefits obtained by Baron include a sizeable judgment ($16,151) and the avoidance of nearly half a million dollars in liability on the

counterclaims. The Court of Appeals concluded that Baron sought over $70,000 and recovered only $16,151, thus the beneficial result was not significant.

. . . .

I conclude that the trial court properly applied the relevant factors and that its order is supported by the record.

- *Glasscock v. Glasscock,* **304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991):**
[W]e clarify the six factors cited by this Court in determining a reasonable attorney's fee include:
  (1) the nature, extent, and difficulty of the case;
  (2) the time necessarily devoted to the case;
  (3) professional standing of counsel;
  (4) contingency of compensation;
  (5) beneficial results obtained;
  (6) customary legal fees for similar services.
*Donahue v. Donahue,* 299 S.C. 353, 384 S.E.2d 741 (1989). While "contingency of compensation" is an appropriate factor considered in awarding attorney's fees, the contingency to be considered is whether the party on whose behalf the services were rendered will be able to pay the attorney's fee if an award is not made. Further, the factor "beneficial results obtained" merely aids in determining whether an award is appropriate when considering whether the services of a lawyer facilitated a favorable result. Neither of these factors endorses use of a percentage fee. . . . .

Further, we hold that a fee award must be based upon a reasonable hourly fee. Applying the above six factors to determine an appropriate fee award, the reasonableness of the hourly rate shall be determined according to: (1) the professional standing of counsel; and (2) the customary legal fees for similar services. The reasonableness of the number of hours billed shall be determined according to: (1) the nature, extent, and difficulty of the case; and (2) the time necessarily devoted to the case.[FN1]

  [FN1] As discussed above, the remaining factors, "contingency of compensation" and "beneficial results obtained" are to be considered in determining whether an award

should be made. In making this determination, the abilities of the parties to pay, their respective financial conditions, and the effect of the attorney's fees on each party's standard of living are also to be considered. *Mitchell v. Mitchell*, 283 S.C. 87, 320 S.E.2d 706 (1984).

Applying these factors here, we find the total hourly fee of $51,998.75 reasonable and affirm the award of attorney's fees in this amount.

● *Taylor v. Medenica*, **331 S.C. 575, 580–81, 503 S.E.2d 458, 461–62 (1998):**

The trial court considered each of the above factors in setting the attorney's fee award. The trial judge based his award on the affidavits submitted by Mrs. Taylor's three attorneys and the affidavit of an attorney who did not participate in this matter but attested the hourly rates and hours submitted were appropriate. The trial judge noted he had presided over a number of the discovery motions in this case, all of the pretrial motions, and the two and one-half week trial. The court determined the amount of time estimated by Mrs. Taylor's attorneys, approximately 1500 hours, was appropriate, if not conservative. The court recognized all of Mrs. Taylor's attorneys were experienced and capable trial attorneys and agreed the hourly rates for each were appropriate. The court noted the attorneys had accepted this case on a contingency fee basis and opined it thought UTPA actions were one of the most difficult types of cases to try. The trial court recognized the beneficial results obtained by the attorneys, both in terms of the $108,726 recovered under the UTPA by Mrs. Taylor from CIBL and in terms of the public benefit in deterring CIBL from similar conduct.

In addition, the trial court took judicial notice that CIBL vigorously contested Mrs. Taylor's claims it had violated the UTPA, thereby requiring Mrs. Taylor to present witnesses in response. Mrs. Taylor's experts testified CIBL's laboratory tests were excessive, "absolutely bizarre," and the results were questionable. One expert testified he believed the tests were conducted for the purpose of generating income. One witness testified there was no medical reason

for any of the tests. Another witness testified the tests were painful to Mrs. Taylor yet medically worthless.

We have reviewed the affidavits submitted by counsel and agree they are somewhat deficient. One affidavit includes approximately 78 hours of time for work performed prior to the filing of Mrs. Taylor's second amended complaint. Moreover, the affidavits do not specifically state the time spent on the UTPA claim against CIBL.

In spite of these deficiencies, we conclude there is evidence which supports the approximately 1500 hours of time spent by Mrs. Taylor's attorneys on this matter. The affidavits note the time spent by other attorneys and some legal professionals was not submitted for reimbursement. The judge who presided over the majority of this matter stated the submitted time was, in his view, conservative. Furthermore, time spent is but one factor to consider in setting a reasonable attorney's fee. *Baron Data Systems, Inc. v. Loter, supra.*

With regard to the issue of estimates, two of the three affidavits state the attorneys did not keep records of the time spent on this case. Nonetheless, the accompanying time sheets do list specific services rendered and the time spent performing each service. We conclude the affidavits and accompanying time sheets fairly reflect the time spent by the attorneys on this matter.

Finally, there is no requirement that an attorney's fee be less than or comparable to a party's monetary judgment. This Court has approved an award of attorney's fees where the fee substantially exceeded the actual recovery. *Baron Data Systems, Inc. v. Loter.*

We conclude the trial judge properly considered all six factors in determining the appropriate attorney's fee and find his decision awarding $500,000 in attorney's fees and $24,068 in costs is supported by the record. *Jackson v. Speed, supra.* (Footnotes omitted).

### C. Court is Required to make Findings of Fact for Each of the Six Factors

"When an award of attorney's fees is requested and authorized by contract or statute, the court should make specific

findings of fact on the record for each factor set forth in *Collins v. Collins,* [239 S.C. 170, 122 S.E.2d 1 (1961)]." *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 494, 427 S.E.2d 659, 661 (1993).

"On appeal, absent sufficient evidentiary support on the record for each factor, the award should be reversed and the issue remanded for the trial court to make specific findings of fact." *Id.* This proposition has been interpreted by our courts to mean that an award for attorney's fees will not be reversed due to a lack of findings in the order when the record supports the judge's determination. *See Jackson v. Speed,* 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997) ("[A]n award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor."); *McMaster v. Strickland,* 322 S.C. 451, 455, 472 S.E.2d 623, 626 (1996) (affirming special referee's award of attorney's fees notwithstanding his failure to make specific findings about each of the six *Blumberg* factors because the record contained ample support for each of the six factors).

Encapsulating the facts of this case and the law, I conclude that the amount of the award of the attorney's fee is **NOT** supported by the evidentiary record. Further, the amount of the award is unreasonable and unjustified. In reviewing the *Baron Data* factors and juxtaposing the evidentiary record to the law extant, I come to the ineluctable conclusion that the amount of the award of attorney's fees far exceeds any notion of reasonableness.

## *CONCLUSION*

I hold that in South Carolina under section 39–65–30 of the South Carolina Code an attorney's fee must be actually incurred before the court can award an attorney's fee. Additionally, I determine that the amount of the award of the attorney's fee in the case *sub judice* is unreasonable under the facts and law. Accordingly, I **VOTE** to **REVERSE** the award of fees because no attorney's fee was incurred in this case. Alternatively, even if an award of an attorney's fee is appropriate under the statute, I **VOTE** to **REMAND** for further consideration as to a reasonable amount.

BEATTY, J., dissenting in a separate opinion:

I respectfully dissent. Rule 219 SCACR states that en banc consideration is not favored and ordinarily will not be granted except: (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions; or (2) when the proceeding involves a question of exceptional importance. The case sub judice does not adhere to either exception. Therefore, I dissent.

SHORT, J., (dissenting in a separate opinion):

I respectfully dissent. I join in Judge Anderson's dissent in finding no attorney fee agreement existed between Middleton and his attorney. However, having found the absence of a fee agreement, I do not find it necessary to address the reasonableness of the attorney's fee in this matter.

CURETON, A.J.: (Dissenting in separate opinion):

I too agree with Judge Anderson's dissent to the extent it finds no attorney fee agreement was ever entered into between Middleton and his attorney. I also agree with Judge Short that having concluded there was no fee agreement, there is no need to address the reasonableness of the attorney fee award.