**GTR RENTAL, LLC f/k/a CitiCapital Trailer Rental, Inc., Plaintiff,**

v.

**John DALCANTON, Gary Gillion, and Capital City Trailer, LLC, Defendants.**

**C/A No. 3:05–1007–MBS.**

United States District Court,
D. South Carolina,
Columbia Division.

March 25, 2008.

Judgment Entered March 27, 2008.

Benjamin Rush Smith, III, Brian P. Crotty, Don Lawrence Kristinik, III, Nelson Mullins Riley and Scarborough, Columbia, SC, Christina Rampey Hunoval, Nelson Mullins Riley and Scarborough, Charlotte, NC, Allen D. Allred, Lawrence C. Friedman, Stephen B. Higgins, Thompson Coburn, Matthew Wilson Geekie, Xtra Corporation, St. Louis, MO, for Plaintiff.

Bonnie D. Shealy, Frank Rogers Ellerbe, III, Rachel G. Peavy, Robinson McFadden and Moore, John A. O'Leary, O'Leary Associates, Robert Yates Knowlton, Sarah Spruill, Travis C. Wheeler, Haynsworth Sinkler Boyd, Columbia, SC, Adam Howard Charnes, Kilpatrick Stockton, Winston–Salem, NC, Timothy A. Duffy, Burleson Pate and Gibson, Dallas, TX, for Defendants.

## ORDER

MARGARET B. SEYMOUR, District Judge.

Plaintiff GTR Rental, LLC ("GTR"), formerly known as CitiCapital Trailer Rental, Inc. ("CitiCapital"), is a trailer leasing company headquartered in St. Louis, Missouri. Defendant John DalCanton was employed as vice president of CitiCapital's trailer leasing division. Defendant Gary Gillion was employed as regional sales manager of CitiCapital.

Around November 2003, while still employed with CitiCapital, Gillion formed Defendant Capital City Trailer, LLC ("Capital City"). Capital City also was in the trailer renting business and competed directly with CitiCapital. DalCanton was aware of Capital City Trailer's existence as early as March 2004.

CitiCapital alleged in this action that DalCanton and Gillion used Capital City to convert money and resources from CitiCapital. The case was tried before a jury commencing on June 18, 2007. The evidence adduced at trial demonstrated that Gillion, who was acting for Capital City, would submit falsified credit approval requests to DalCanton, who was acting for CitiCapital. DalCanton would then approve the credit requests and lease CitiCapital's trailers to Capital City at prices that were below market value. Capital City then would sublease the trailers to CitiCapital's existing customers for market value rates. On numerous occasions, Capital City would fail to pay CitiCapital at all for the sham leases. There was also evidence that Gillion and DalCanton would provide false assurances to customers that Capital City and CitiCapital were sister organizations.

Evidence also was adduced demonstrating that Capital City would sell CitiCapital's trailers to third parties and keep the profits. Capital City also would instruct CitiCapital customers to remit future rent payments to Capital City. DalCanton profited from this operation by accepting $46,000 in checks and an undisclosed amount of cash from Gillion. Significantly, Gillion asserted his Fifth Amendment privilege against self-incrimination throughout the proceeding and trial.

On June 22, 2007, the court granted judgment as a matter of law in favor of CitiCapital as to its claims against Gillion for (1) breach of fiduciary duty; (2) conversion; (3) fraud; (4) violation of South Carolina Unfair Trade Practices Act (SCUTPA); and (5) breach of contract. Thereafter, the issue of liability as to DalCanton and Capital City was presented to the jury, as was the issue of damages, if any, to be assessed as to Gillion.

As to DalCanton, a jury determined by a preponderance of the evidence that DalCanton breached his fiduciary duty as an employee of CitiCapital. The jury awarded damages of $88,450 as to this cause of action. The jury determined by a preponderance of the evidence that DalCanton converted property of CitiCapital. The jury awarded damages of $205,803 as to this cause of action. The jury determined by clear and convincing evidence that DalCanton committed fraud against CitiCapital. The jury awarded money damages in the amount of $46,544 as to this cause of action. The jury also found by a preponderance of the evidence that DalCanton violated the SCUTPA. The jury awarded $71,544 as to this cause of action. In addition, the jury determined by clear and convincing evidence that CitiCapital was entitled to punitive damages from DalCanton in the amount of $800,000.

As to Capital City, the jury determined that CitiCapital had proved $10.00 in damages for conversion; $10.00 in damages for fraud; $10.00 in damages for violation of

the SCUTPA; and $10.00 for breach of contract. The jury also awarded $100.00 in punitive damages as to Capital City.

As to Gillion, the jury awarded damages in the amount of $88,450 for breach of fiduciary duty; $205,803 as to conversion; $3,000 for fraud; $46,544 for violation of the SCUTPA, and $116,125 for breach of contract. In addition, the jury determined by clear and convincing evidence that punitive damages should be awarded against Gillion in the amount of $300,000. *See generally* Verdict Form (Entry 236).

This matter now is before the court on various motions filed by the parties. The court will address the motions in turn.

A. *Motion of Gillion and Capital City for judgment as a matter of law, to alter or amend the judgment, and for a new trial, which motion was filed July 16, 2007 (Entry 247). CitiCapital filed a memorandum in opposition to Defendants' motion on August 6, 2007, to which Gillion and Capital City filed a reply on August 16, 2007. CitiCapital filed a surreply on August 24, 2007.*

Gillion and Capital City first assert that CitiCapital should be required to elect its remedy. These Defendants assert that CitiCapital challenged the same course of conduct and presented one calculation of damages to the jury under all of its causes of action. The court disagrees.

The doctrine of election of remedies involves a choice between different forms of redress afforded by law for the same injury, or different forms of proceeding on the same cause of action. *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429, 431 (S.C.Ct.App.1995) (citing *Boardman v. Lovett Enter., Inc.*, 283 S.C. 425, 323 S.E.2d 784 (S.C.Ct.App.1984), *rev'd on other grounds*, 287 S.C. 303, 338 S.E.2d 323 (1985)). Its purpose is to pre-

vent double redress for a single wrong. *Id.* at 432 (citing *Save Charleston Found. v. Murray*, 286 S.C. 170, 333 S.E.2d 60 (S.C.Ct.App.1985)). However, the principle has no application where separate causes of action, each based on different facts, exists. *Id.* (citing *Harmon v. Jenkins*, 282 S.C. 189, 318 S.E.2d 371 (S.C.Ct. App.1984)).

In this case, the evidence supported CitiCapital's claims that it had been subjected to the distinct harms alleged against Gillion and Capital City. The causes of action are based on different elements. The facts supporting the separate claims asserted by CitiCapital occurred over a lengthy period and involved numerous activities involving CitiCapital's customers, property, and finances. In the court's view, the complex series of transactions undertaken by Defendants does not comprise a single wrong that would give rise to but one cause of action. *See Hospital Care Corp. v. Commercial Cas. Ins. Co.*, 194 S.C. 370, 9 S.E.2d 796 (1940). Gillion and Capital City's assertion that CitiCapital should be required to elect its remedies is without merit.

Gillion and Capital City next contend that CitiCapital should be required to elect whether it will seek trebling of its damage under the South Carolina Unfair Trade Practices Act or seek recovery under the jury award of punitive damage. In *Smith v. Strickland*, 314 S.C. 192, 442 S.E.2d 207, 210 (S.C.Ct.App.1994), the South Carolina Court of Appeals noted that a plaintiff can recover damages that are punitive in nature only once, either as expressly-designated punitive damages or as treble damages, where their recovery concerns a single wrong. In this case, the evidence supports the finding of separate and distinct wrongs for fraud (creating a false paper trail and insurance papers) and

violation of the South Carolina Unfair Trade Practices Act (unfair competition with CitiCapital). Gillion and Capital City's assertion that CitiCapital should be limited to one punitive damages award is without merit.

Gillion and Capital City next assert that they should be granted judgment as a matter of law as to CitiCapital's causes of action for conversion, breach of fiduciary duty, and violation of the South Carolina Unfair Trade Practice Act. The court already has granted judgment as a matter of law in favor of CitiCapital on these causes of action. Thus, the court will construe the motion as seeking the court's reconsideration of these rulings under Fed.R.Civ.P. 59(e).

Although Rule 59 addresses grounds for new trials, some courts have reasoned that the concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury. 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2804. Notwithstanding the broad nature of Rule 59, motions for reconsideration are disfavored. They are not a matter of routine practice. *Settino v. City of Chicago,* 642 F.Supp. 755, 759 (N.D.Ill.1986). Several courts have observed that they are neither expressly cognizable under the Federal Rules of Civil Procedure nor authorized by the local rules of the district court. *See, e.g., Fisher v. Samuels,* 691 F.Supp. 63, 74 (N.D.Ill.1988).

█ Motions for reconsideration are inappropriate merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion. *Keene Corp. v. Int'l Fidelity Ins. Co.,* 561 F.Supp. 656 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984). The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommo-

date an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton,* 994 F.2d 1076 (4th Cir.1993). The Fourth Circuit has emphasized that counsel's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. *Id.* (citing *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990)).

Gillion and Capital City argue that the trailers at issue were returned to CitiCapital and CitiCapital cannot therefore seek to recover their value; that CitiCapital's remedy for conversion of checks should have been asserted under the Uniform Commercial Code; that Gillion disclosed the trailer lease agreements to CitiCapital through DalCanton; that CitiCapital was not harmed by any defects in the insurance certificates; and that there was no adverse impact on the public interest that would satisfy this element of proving a violation of the SCUTPA.

Gillion and Capital City do not assert that there has been an intervening change in the law or newly discovered evidence. To the extent Gillion and Capital City contend that the court must correct a clear error of law or prevent manifest injustice, the court concludes, as it did previously, that Gillion and Capital City failed to produce any evidence to rebut CitiCapital's claims of liability. Moreover, the evidence adduced at trial supports a finding that Gillion and Capital City converted CitiCapital's customers and revenues, in addition to the trailers. Gillion and DalCanton acted in concert to harm CitiCapital in breach of their fiduciary duties to their employer. With respect to the SCUTPA, the public interest was impacted by the potential for repetition and by placing both the public at large and CitiCapital's customers at risk.

Gillion and Capital City's contentions are without merit.

Gillion and Capital City also contend that the award of punitive damages against Gillion should be reduced or a new trial granted because the award is excessive. The court disagrees.

As an initial matter, the court must conduct a post-verdict review of the punitive damages award as required by *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991), and *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The review ensures that a punitive damages award comports with due process. *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 638 S.E.2d 667 (2006).

■ The *Gamble* factors are: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) defendant's ability to pay; and (7) other factors deemed appropriate. *Gamble*, 406 S.E.2d at 354. In this case, the court finds that Gillion was extremely culpable in forming a company to operate as a direct competitor to CitiCapital during the time he was employed by CitiCapital, thus breaching his duty of loyalty to his employer; in submitting falsified credit approval requests to CitiCapital and otherwise defrauding CitiCapital; and in converting monies, property, and customers of CitiCapital to his own use through Capital City. Gillion undertook these activities for over a year. Gillion hid his actions from CitiCapital during the pendency of his activities, including the creation of a false paper trail by sending cashier's checks to CitiCapital to conceal the fact that checks written to CitiCapital by its customers were being diverted to Capital City's bank account. There is no evidence of past

similar conduct by Gillion; nevertheless, the court finds that the punitive damages award will deter Gillion from similar conduct in the future. The court is unaware of whether Gillion is capable of paying the award. The court concludes that the punitive damages award comports with due process under *Gamble*.

■ Under *Gore*, the court must review (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the remedy and the civil or criminal penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575, 583, 116 S.Ct. 1589. The first factor, the degree of reprehensibility of the defendant's conduct, is the most important indicium of the reasonableness of a punitive damages award. *Id.* In evaluating the reprehensibility of a defendant's conduct, the court must look to whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). With respect to the second factor, the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred. *Id.* at 581, 116 S.Ct. 1589 (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993)). The third factor mandates that the court accord substantial deference to legislative judgments concerning appropri-

ate sanctions for the conduct at issue. *Id.* at 583, 116 S.Ct. 1589 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 301, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, Jr., concurring in part and dissenting in part)).

The court deems a scheme converting one's employer's livelihood to one's own financial benefit to be reprehensible conduct. Here, Gillion spent over a year engaging in a series of fraudulent transactions designed to funnel income from his employer. In addition, his actions in fabricating insurance coverage further created risk to the public at large.

■ The ratio between the actual damages awards and the $300,000 punitive damages award is not large. It is not clear whether the jury awarded punitive damages based on its findings of damages for breach of fiduciary duty, conversion, or fraud, or on a combination of the awards. Viewing the awards conservatively, the greatest disparity is between the fraud damages ($3,000) and the punitive damages award, which is a 100:1 ratio. The Supreme Court has recognized that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore,* 517 U.S. at 582, 116 S.Ct. 1589. As noted above, Gillion's actions were egregious and could support a higher punitive damages claim.

The court will not speculate as to what state and federal laws Gillion might have broken in pursuing his scheme against CitiCapital. However, the fact that he asserted his Fifth Amendment rights during a civil trial indicates that he was concerned about the possibility that criminal charges

could be brought against him for his conduct. The court concludes that the award of punitive damages passes constitutional muster and does not improperly exceed a single-digit ratio between punitive and compensatory damages to a significant degree.

■ With respect to Gillion and Capital City's motion for a new trial on the issue of punitive damages, the court must set aside the verdict and grant a new trial if it is of the opinion that the verdict (1) is against the clear weight of the evidence; (2) is based upon evidence that is false; or (3) will result in a miscarriage of justice, even though there may be substantial evidence that would prevent the direction of a verdict. *Atlas Food Sys. & Svcs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir.1996). Unlike the procedure under Fed R. Civ. P. 50(b), a district is permitted to weigh the evidence on a motion for a new trial under Rule 59(e). *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 186 (4th Cir.1994).

For the reasons stated hereinabove, the court concludes that the punitive damages awarded against Gillion and Capital City is not against the clear weight of the evidence, based upon evidence that is false, and will not result in a miscarriage of justice.

Gillion and Capital City's motion (Entry 247) is **denied.**

B. *Motion of DalCanton for judgment as a matter of law, for a new trial, and to alter or amend the judgment, which motion was filed July 18, 2007 (Entry 250). CitiCapital filed a memorandum in opposition to Defendant's motion on August 6, 2007, to which DalCanton filed a reply on August 24, 2007.*

DalCanton contends that he is entitled to judgment as a matter of law with re-

spect to CitiCapital's causes of action against him for breach of fiduciary duty, conversion, fraud, and violation of the SCUTPA. The court disagrees.

Fed.R.Civ.P. 50(a) provides that:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue, the court may ... grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

DalCanton first asserts that the jury did not have a sufficient basis for finding against him on CitiCapital's claim for breach of fiduciary duty. DalCanton asserts that his actions were consistent with the best interests of CitiCapital and that he made business judgments that were within his discretion as manager of the company. *See* S.C.Code Ann. § 33–8–420.

■ Among other things, the evidence adduced at trial revealed that DalCanton approved falsified credit requests and leased trailers to Capital City, a competitor, at prices that were below market value. There was evidence that DalCanton colluded with Gillion in falsely informing CitiCapital's customers that Capital City was a sister company. A December 3, 2004 letter written by DalCanton falsely told a customer that his account had been sold to Capital City and to remit further payments subject to Capital City's terms. Moreover, DalCanton failed to disclose to his employer either Gillion's conflict of interest or his own. The court finds that a reasonable jury had a legally sufficient evidentiary basis to find for CitiCapital on the issue of whether DalCanton breached his fiduciary duty to his employer.

DalCanton next asserts that there was no evidence by which a jury could have found that he converted any property of CitiCapital. DalCanton contends that the only evidence presented showed that he received checks from Gillion. According to DalCanton, there was no evidence that these checks represented a "specific, identifiable fund" that he was obligated to deliver to CitiCapital. *See Richardson's Restaurants, Inc. v. National Bank of South Carolina*, 304 S.C. 289, 403 S.E.2d 669, 672 (S.C.Ct.App.1991) ("There can be no conversion of money unless there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff.").

■ At trial, DalCanton argued that the monies were repayment for loans he previously had made to Gillion. The jury was able to judge his credibility and had sufficient information to discount his explanation. Even if the jury did believe DalCanton regarding the checks from Gillion, the evidence demonstrated that DalCanton colluded with Gillion to convert both trailers and customers of CitiCapital. The court finds that a reasonable jury had a legally sufficient evidentiary basis to find for the party on the issue of whether DalCanton should be held liable to CitiCapital for conversion.

■ DalCanton next contends that the evidence was insufficient to establish a cause of action for fraud. According to DalCanton, there was no evidence that he was aware that Capital City was not paying CitiCapital contractual amounts due or that Capital City was using CitiCapital's trailers prior to execution of lease agreements between Capital City and CitiCapital. However, there was evidence that, among other things, DalCanton knowingly approved fraudulent credit requests and that he was involved in falsifying financial records. The evidence further supports a finding that DalCanton colluded with Gil-

lion to defraud CitiCapital. The court finds that a reasonable jury had a legally sufficient evidentiary basis to find for Citi-Capital on the issue of whether DalCanton should be held liable to CitiCapital for fraud.

Finally, DalCanton asserts that SCUT-PA has no applicability to CitiCapital's allegations against him because he did not compete with CitiCapital or conduct a trade. The evidence supported a finding, however, that DalCanton combined with Gillion to compete against CitiCapital. The court finds that a reasonable jury had a legally sufficient evidentiary basis to find for CitiCapital on the issue of whether DalCanton should be held liable to CitiCapital for violations of the SCUTPA. Dal-Canton's motion for judgment as a matter of law is **denied.**

DalCanton also moves for a new trial. DalCanton contends that he was prejudiced by Gillion's asserting the Fifth Amendment during trial, and that the court erred in declining to sever his trial.

■ At the conclusion of trial, the court charged the jury, without objection:

> During the trial, you heard evidence from a defendant refusing to answer certain questions on the grounds that the answers may tend to incriminate him. A witness has a constitutional right to decline to answer questions on the grounds that the answers may tend to incriminate him. However, you may infer by such refusal to answer that the answers would have been adverse to that defendant's interests.

Thus, the jury was instructed that Gillion's assertion of the Fifth Amendment should be construed adversely to him only. Moreover, trial counsel for DalCanton reminded the jury during closing argument that it would be improper to draw an inference against DalCanton based upon Gillion's decision to assert his Fifth Amendment privilege. The court concludes that the jury verdict was not against the clear weight of the evidence, and will not result in a miscarriage of justice.

DalCanton further moves pursuant to Fed.R.Civ.P. 59(e) for an order requiring CitiCapital to elect its remedy. For the reasons stated herein above, the court finds that DalCanton's assertion that Citi-Capital should be required to elect its remedies is without merit.

■ Finally, DalCanton contends that the jury's punitive damage award cannot withstand constitution scrutiny. The court disagrees.

As noted previously, the court must conduct a post-verdict review of the punitive damages award as required by *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991), and *BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The *Gamble* factors are: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (7) defendant's ability to pay; and (8) other factors deemed appropriate. *Gamble,* 406 S.E.2d at 354.

The court finds that DalCanton was extremely culpable in facilitating and profiting from Gillion's actions. The court finds that DalCanton colluded with Gillion to compete against CitiCapital during the time they both were employed by CitiCapital. Gillion would not have been successful in undercutting CitiCapital's business had not DalCanton approved the falsified credit applications and undertaken other acts to aid Gillion. DalCanton undertook these

activities for over a year and concealed his acts from CitiCapital. There is no evidence of past similar conduct by DalCanton; nevertheless, the court finds that the punitive damages award will deter DalCanton from similar conduct in the future. The court is unaware of whether DalCanton is capable of paying the award. The court concludes that the punitive damages award comports with due process under *Gamble.*

Under *Gore,* the court must review (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the remedy and the civil or criminal penalties authorized or imposed in comparable cases. *Gore,* 517 U.S. at 575, 583, 116 S.Ct. 1589. The first factor, the degree of reprehensibility of the defendant's conduct, is the most important indicium of the reasonableness of a punitive damages award. *Id.* In evaluating the reprehensibility of a defendant's conduct, the court must look to whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). With respect to the second factor, the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred. *Id.* at 581, 116 S.Ct. 1589 (quoting *TXO Prod.*

*Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 460, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993)). The third factor mandates that the court accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue. *Id.* at 583, 116 S.Ct. 1589 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 301, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, Jr., concurring in part and dissenting in part)).

As with Gillion, the court deems a scheme converting one's employer's livelihood to one's own financial benefit to be reprehensible conduct. Here, DalCanton facilitated fraudulent transactions that were designed to divert income from his employer, and he profited from his actions.

The ratio between the actual damages awards and the $800,000 punitive damages award is not large. It is not clear whether the jury awarded punitive damages based on its findings of damages for breach of fiduciary duty, conversion, or fraud, or on a combination of the awards. Viewing the awards conservatively, the greatest disparity is between the fraud damages ($46,544) and the punitive damages award, which is slightly more than a 17:1 ratio. The court concludes that DalCanton's conduct as an officer of CitiCapital was egregious and could support a higher punitive damages claim.

As with Gillion, the court will not speculate as to whether DalCanton violated state and federal laws. Nevertheless, the court concludes that the award of punitive damages passes constitutional muster and does not improperly exceed a single-digit ratio between punitive and compensatory damages to a significant degree.

For the reasons stated, DalCanton's motion (Entry 250) is **denied.**

C. *CitiCapital's motion for fees and expenses based upon Gillion and Capital City's noncompliance with Rule 30(b)(6), and with the court's June 15, 2007, order (Entry 251).*

On June 15, 2007, the court granted CitiCapital's motion for discovery sanctions against Gillion and Capital City based on these Defendants' failure to present an adequate Rule 30(b)(6) corporate designee at the March 27, 2007 and June 5, 2007 depositions of Capital City. CitiCapital seeks attorneys' fees in the amount of $27,722.50 and expenses of $2,781.93 as discovery sanctions. CitiCapital's motion is supported by an affidavit of counsel.

In response, Gillion and Capital City assert that the jury verdict of $10 actual damages and $100 in punitive damages against Capital City demonstrates that Capital City played no role in the challenged conduct. Thus, these Defendants contend that the court should reconsider its June 15, 2007 ruling in light of the evidence presented at trial and the jury verdict. Gillion and Capital City further assert that the depositions at issue were for the entity Capital City, and any sanctions for failure to comply with Fed. R.Civ.P. 30(b)(6) should be assessed against Capital City only. Gillion and Capital City also contend that the attorneys' fees sought are grossly excessive given that the first deposition lasted only a few minutes, and, according to these Defendants, CitiCapital was not required to expend a great deal of time preparing for the second deposition. The court has thoroughly review the record and the events leading to the imposition of sanctions, and finds Gillion and Capital City's assertions to be without merit. The court further finds the attorneys' fees and expenses sought to be reasonable. CitiCapital's motion for attorneys' fees in the amount of $30,504.43 ($27,722.50 + $2,781.93) is **granted.** Gillion and Capital City shall be jointly and severally liable for this amount.

D. *CitiCapital's motion for attorneys' fees and treble damages pursuant to the SCUTPA, and for prejudgment interest, which motion was filed July 19, 2007 (Entry 252). Gillion and DalCanton filed memoranda in opposition on August 27, 2007, to which CitiCapital filed a reply on September 18, 2007. In addition, CitiCapital filed a Bill of Costs on July 19, 2007 (Entry 253). Gillion and Capital City filed objections to the Bill of Costs on August 6, 2007. DalCanton also filed a response on August 6, 2007. CitiCapital filed a brief in response to Defendants' objections on August 24, 2007.*

CitiCapital moves for attorneys' fees, costs, and treble damages under the SCUTPA. S.C.Code Ann. § 39–5–140 provides, in pertinent part:

(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39–5–20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

1. *Treble damages.* The jury determined that each Defendant violated the SCUTPA. The first question, then, is whether the acts complained of constituted a willful or knowing violation of section

39–5–20, so as to mandate treble damages. As set forth in detail hereinabove, the evidence adduced at trial supported a finding that DalCanton and Gillion used Capital City to divert monies and other resources from CitiCapital. Gillion submitted falsified credit approval requests to DalCanton, who approved the requests, knowing that they were fraudulent. DalCanton leased CitiCapital's trailers to Capital City at prices far below market value, and then profited when Gillion, through Capital City, subleased the trailers to CitiCapital's existing customers for market value rates. The evidence was sufficient to support a finding that Gillion and DalCanton sold CitiCapital's trailers to third parties and kept the profits. Further, the evidence supported a finding that Gillion and DalCanton misrepresented to CitiCapital customers that Capital City was a sister company of CitiCapital, and instructed CitiCapital customers to remit future rent payments to Capital City. The court concludes that Defendants' acts were willful and knowing, and that treble damages are warranted under the SCUTPA. Therefore, the judgment as to DalCanton for violating the SCUTPA is increased from $71,544 to $214,632. The judgment as to Gillion for a violating the SCUTPA is increased from $46,544 to $139,932. CitiCapital waives treble damages as to Capital City.

2. *Attorneys' fees.* CitiCapital seeks to recover all of the legal fees it incurred in litigating the case. According to CitiCapital, its claims for fraud, conversion, breach of fiduciary duty, and breach of conduct involved legal and factual issues sufficiently common to the SCUTPA that it is appropriate to award CitiCapital all of the fees it incurred in litigating the case, that is $1,119,312. CitiCapital asserts that the award should be apportioned 60.6 percent to DalCanton ($678,303.07) and 39.4 percent to Gillion ($441,008.92). Its motion is supported by affidavits of lead counsel an local counsel. In addition, CitiCapital has submitted under seal an itemized breakdown of its attorney and paralegal hours billed. The court notes that the attorneys' fees sought pursuant to section 39–5–20 should be reduced to account for the sanction for discovery abuse, as discussed hereinabove. Accordingly, the total attorneys' fee at issue is $1,091,589.50 ($1,119,312—$27,722.50). Under CitiCapital's suggested proportioning, DalCanton would be liable for $661,503.23 and Gillion for $430,086.26 of the revised attorneys' fee.

■ The question is whether the attorneys' fees sought by CitiCapital are reasonable. When determining what constitutes a reasonable attorney' fee, the trial court must consider the following six factors: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Williamson v. Middleton,* 374 S.C. 419, 649 S.E.2d 57, 68 (S.C.Ct.App.2007) (citing cases). Consideration should be given by the trial court to all six factors; none of the factors is controlling. *Id.* (citing cases).

As to the first factor, the court notes that the claims asserted by CitiCapital are not novel or complex. However, CitiCapital was required to expend additional time in pursuing discovery because of Defendants' refusal to participate in discovery and Gillion's assertion of his Fifth Amendment privilege. CitiCapital was required to obtain documents via third-party subpoenas and also was required to depose third parties to adduce facts because Defendants resisted disclosure of relevant information. The court finds that the first factor militates in favor of CitiCapital.

As to the second factor, CitiCapital was required to expend a great deal of time and effort on the case in order to obtain discovery, as noted hereinabove, and to investigate the falsified documents created by Gillion and DalCanton in order to conceal their wrongful conduct. The proceedings included a request for temporary restraining order, numerous motions, two years of discovery, as well as a five-day trial. The court finds that the second factor militates in favor of CitiCapital.

As to the third and sixth factors, counsel are experienced and capable trial attorneys, and their billing rates are customary in the community. Thus, the third factor militates in favor of CitiCapital.

As to the fourth factor, counsel did not work on a contingency. This factor has no impact on the court's analysis.

As to the fifth factor, CitiCapital obtained a sizable monetary judgment on its SCUTPA claims against Gillion and DalCanton. The court finds that the fifth factor militates in favor of CitiCapital. However, the SCUTPA award comprised only approximately 17.4 percent of the total award as to DalCanton, and approximately 10.2 percent of the total award as to Gillion.

 Giving consideration to all the factors,[1] the court concludes that a reasonable attorneys' fee award is $550,000. The award shall be apportioned 60.6 percent to DalCanton ($333,300) and 39.4 percent to Gillion ($216,700).

3. *Bill of Costs*—CitiCapital has also filed a bill of costs in the amount of $31,553.34. Defendants object to the bill of costs as including costs not authorized under Local Civil Rule 54.03. Local Rule 54.03 applies when the bill of costs is filed pursuant to 28 U.S.C. § 1920. In this case, CitiCapital seeks costs pursuant to section 39–5–20. Defendants' objections are without merit.

The court discerns an appropriate award of costs to be $16,000. The award shall be apportioned 60.6 percent to DalCanton ($9,696) and 39.4 percent to Gillion ($6,304).

 4. *Prejudgment interest.* CitiCapital seeks prejudgment interest at the rate of 8.75 percent from the time it filed suit on April 1, 2005 until the date of judgment, July 5, 2007. S.C.Code Ann. § 34–31–20(A) provides:

> In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum.

In South Carolina, the law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, payment is demandable, if the sum due is certain or capable of being reduced to a certainty. *Liberty Mut. Ins. Co. v. Employee Resource Mgmt., Inc.*, 176 F.Supp.2d 510 (D.S.C.2001) (citing *APAC Carolina, Inc. v. Town of Allendale*, 41 F.3d 157, 165 (4th Cir.1994)). The fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest. *Id.* (citing cases). The proper test for determining whether

---

**1.** The court has applied factors under state law. *See, e.g., Cantrell v. M & M Chevrolet, Inc.*, 17 F.3d 1433 (4th Cir.1994) (citing state law). To the extent the court must analyze the reasonableness of the fees requested by CitiCapital utilizing the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), the court finds the hourly rates to be appropriate, and adjusts the hours to represent a reasonable number of hours expended on the SCUTPA claim so that a fee of $550,000 is obtained.

prejudgment interest may be awarded is whether the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose. *Id.* (citing *Babb v. Rothrock*, 310 S.C. 350, 426 S.E.2d 789, 791 (1993)). When an otherwise unliquidated claim is capable of being reduced to certainty by a simple mathematical calculation, it can be considered liquidated for the purpose of awarding prejudgment interest. *Id.* (citing *Builders Transport, Inc. v. South Carolina Prop. & Cas. Ins. Guar. Ass'n*, 307 S.C. 398, 415 S.E.2d 419, 424 (S.C.Ct.App. 1992)).

In the court's view, prejudgment interest is appropriate with respect to the jury awards for CitiCapital's claims against DalCanton for conversion ($205,803), and as to Gillion for conversion and breach of contract ($205,803 + $116,125 = $321,928). The Clerk of Court will amend the judgment to enter the appropriate prejudgment interest as stated herein.

E. *CitiCapital's motion to seal, which motion was filed September 18, 2007* (Entry 300)

CitiCapital's motion to seal is granted.

F. *DalCanton's motion for a hearing, which motion was filed February 7, 2008* (Entry 304)

DalCanton's motion is denied as moot.

**IT IS SO ORDERED.**

## AMENDED JUDGMENT IN A CIVIL CASE

[ ] **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[ ] **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or

heard and a decision has been rendered.

[X] **Decision on the Record.** This action came to hearing before the Court, the Honorable Cameron McGowan Currie, U.S. District Judge, presiding. The Court having granted (1) Plaintiff GTR Rental LLC, f/k/a CitiCapital Trailer Rental, Inc.'s Motion to Dismiss the first, third and fourth counterclaims of defendants Gary Gillion and Capital City Trailer, LLC and (2) a part of the second counterclaim of defendant/counter plaintiff John Dalcanton, which alleges a violation of the South Carolina Wage Payment Act,

**IT IS ORDERED AND ADJUDGED** that defendants/counter claimants Gary Gillion and Capital City Trailer shall take nothing of plaintiff/counter defendant GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc. on their first, third and fourth counterclaims and they are dismissed with prejudice.

**IT IS FURTHERED ORDERED AND ADJUDGED** that defendant/counter claimant John DalCanton shall take nothing of plaintiff/counter defendant GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc. on his second counterclaim to the extent that it alleges a violation of the South Carolina Wage Payment Act and it is dismissed with prejudice.

The Plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc.'s Motion for Judgment as a Matter of Law on the complaint having been granted by the court as to liability, the Honorable Margaret B. Seymour, U.S. District Judge, presiding; the Jury having rendered its verdict for damages on the Plaintiff's claims by answering "yes" to the propounded interrogatories; and the plaintiff's motions for attorneys fees, treble damages pursu-

ant to SCUTPA, and prejudgment intereset on the conversion and breach of contract claims having come before Court, the Honorable Margaret B. Seymour, U.S. District Judge, presiding, and said motions having been granted,

**IT IS SO ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant John DalCanton the sum of Eighty-Eight Thousand, Four Hundred Fifty and 00/100 ($88,450.00) Dollars for the breach of fiduciary duty claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant John DalCanton the sum of Two Hundred Five Thousand, Eight Hundred Three ($205,803.00) Dollars for the conversion claim plus prejudgment interest on it to accrue at the rate of 8.75% per annum from April 1, 2005 until July 5, 2007.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant John DalCanton the sum of Forty-Six Thousand, Five Hundred Forty-Four and 00/100 ($46,544.00) Dollars for the fraud claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant John DalCanton the sum of Two Hundred Fourteen Thousand, Six Hundred Thirty-Two and 00/100 ($214,632.00) Dollars for the South Carolina Unfair Trade Practices Act claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant John DalCanton the sum of Eight Hundred Thousand and 00/100 ($800,000.00) Dollars for punitive damages.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Capital City Trailer, LLC the sum of Ten and 00/100 ($10.00) Dollars for the conversion claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Capital City Trailer, LLC the sum of Ten and 00/100 ($10.00) Dollars for the fraud claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Capital City Trailer, LLC the sum of Ten and 00/100 ($10.00) Dollars for the South Carolina Unfair Trade Practices Act.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Capital City Trailer, LLC the sum of Ten and 00/100 ($10.00) Dollars for the breach of contract claims.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Capital City Trailer, LLC the sum of One Hundred and 00/100 ($100.00) Dollars for punitive damages.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of Eighty-Eight Thousand, Four Hundred Fifty and 00/100 ($88,450.00) Dollars for the breach of fiduciary duty claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of Two Hundred Five Thousand,

Eight Hundred Three and 00/100 ($205,803.00) Dollars for the conversion claim plus prejudgment interest on it to accrue at the rate of 8.75% per annum from April 1, 2005 until July 5, 2007.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of Three Thousand and 00/100 ($3,000.00) Dollars for the fraud claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of One Hundred Thirty-Nine Thousand, Nine Hundred Thirty-Two and 00/100 ($139,932.00) Dollars for the South Carolina Unfair Trade Practices Act claim.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of One Hundred Sixteen Thousand, One Hundred Twenty-Five and 00/100 ($116,125.00) Dollars for the breach of contract claim plus prejudgment interest on it to accrue at the rate of 8.75% per annum from April 1, 2005 until July 5, 2007.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendant Gary Gillion the sum of Three Hundred Thousand and 00/100 ($300,000.00) Dollars for punitive damages.

The jury having further answered "no" to the special interrogatory "Do you find from a preponderance of the evidence that CitiCapital breached the separation agreement entered into with Dalcanton?"

**IT IS FURTHER ORDERED AND ADJUDGED** that the defendant/counter-plaintiff John Dalcanton take nothing on his counterclaim against plaintiff/counter-defendant GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc. and the counterclaim is dismissed with prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover attorneys fees on the SCUTPA claim: (1) of the defendant, John DalCanton, in the amount of Three Hundred Thirty-Three Thousand, Three Hundred and 00/100 ($333,300.00) Dollars, which is apportioned 60.6% of the total amount and, (2) of the defendant, Gary Gillion, in the amount of Two Hundred Sixteen Thousand, Seven Hundred and 00/100 ($216,700.00) Dollars, which is apportioned 34.4% of the total amount.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover costs: (1) of he defendant, Gary Gillion, in the amount of Six Thousand, Three Hundred Four and 00/100 ($6304.00) Dollars, which is apportioned 39.4% of the total amount and, (2) of the defendant, John DalCanton, in the amount of Nine Thousand, Six Hundred Ninety-Six and 00/100 ($9,696.00) Dollars, which is apportioned 60.6% of the total amount.

**IT IS FURTHER ORDERED AND ADJUDGED** that the plaintiff GTR Rental, LLC, f/k/a CitiCapital Trailer Rental, Inc., recover of the defendants, Gary Gillion and Capital City Trailer, LLC, jointly and severally, attorneys fees and expenses in the amount of Thirty Thousand, Five Hundred Four and 43/100 ($30,504.43) Dollars for noncompliance with Rule 30(b)(6) Federal Rules of Civil Procedure.